**Walter WOODS, Adeline Woods, Herman Mazzoline and Alethea Mazzoline, Plaintiffs,**

v.

**Alan M. PIEDMONTE, E.F. Hutton & Company, Inc., a Delaware corporation, and Smith, Hague & Co., Inc., a Michigan corporation, Jointly and Severally, Defendants.**

**Nos. 85–CV–73629–DT, 85–CV–75165–DT.**

United States District Court, E.D. Michigan.

June 8, 1987.

Chris Parfitt, Birmingham, Mich., for plaintiffs.

Gerald C. Davis, Livonia, Mich., David E. Nims, III, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING E.F. HUTTON'S MOTION TO DISMISS COUNTS TWO, FOUR AND EIGHT

HACKETT, District Judge.

This action is presently before the court on defendant E.F. Hutton's motion for an order of dismissal of counts two (violation of NYSE and NASD regulations), four (fraud) and eight (civil RICO) of plaintiffs' complaints. For the reasons stated below E.F. Hutton's motion is denied.

### BACKGROUND

This case is a consolidation of two actions brought by different plaintiffs against the same defendants. The plaintiffs in each case allege that they invested funds with Alan Piedmonte, an employee of E.F. Hutton and later an employee of Smith, Hague & Co., Inc. According to plaintiffs' allegations, Piedmonte told plaintiffs that their money was being invested in a confidential New York account earning interest at 20.7% *per annum*. Plaintiffs then allege that either their money was never invested by Piedmonte or it was invested but later liquidated and converted by Piedmonte. The Woods also allege that their account was churned.

### COUNT II

In Count II of the second amended complaint filed by the Woods' and of the complaint filed by the Mazzolines', plaintiffs allege that defendants have violated the Rules of Fair Practice of the National Association of Securities Dealers (NASD), article III, Sections 2, 18, 19, 21, 27. The Woods' complaint also alleges a violation of section 15. Count II of the complaints also alleges violations of New York Stock Exchange (NYSE) Rules 401, 405, 409, 723 and 726. The Woods' complaint also alleges a violation of rule 408. Defendant E.F. Hutton moves to dismiss this count of plaintiffs' complaint averring that no pri-

vate cause of action exists under the NYSE or NASD rules.

The federal circuits are split as to whether a private cause of action exits under NYSE and NASD rules. The 9th Circuit has held that no private cause of action exists under these rules. *Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980); *Mihara v. Dean Witter & Co.,* 619 F.2d 814 (9th Cir.1980); *Carrott v. Shearson Hayden Stone, Inc.,* 724 F.2d 821 (9th Cir. 1984). These cases dealt primarily with NYSE rule 405 (the "know your customer" rule). The 9th Circuit does permit the introduction of testimony regarding the rules as a standard against which to judge dealer conduct. *Mihara, supra.*

The Eight Circuit holds that a private cause of action under the rules exists, but is not recognized in the absence of a finding of fraud. *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152 (8th Cir.1977); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129 (8th Cir. 1979).

The Second Circuit, which has dealt most often with this issue, has also found that in certain circumstances a private cause of action may lie for breach of a NYSE or NASD regulation. In *Colonial Realty Corp. v. Bache Co.,* 358 F.2d 178 (2nd Cir.1966), the first appellate case to deal with this issue, Judge Friendly stated:

> What emerges is that whether the courts are to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two parties; rather, the court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation. The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law. The rules here at issue, however, are near the opposite pole. Although they do not impose a duty upon members not to engage in conduct inconsistent with fair and equitable principles of trade, which the exchange or association can enforce through disciplinary proceedings, they are something of a catch-all which, in addition to satisfying the letter of discipline members for a wide variety of misconduct, including merely unethical behavior which Congress could well not have intended to give rise to a legal claim. We find little reason to believe that by requiring exchanges and dealers' associations to include such provisions in their rules Congress meant to impose a new legal standard on members different from that long recognized by state law. See Note, Implying Civil Remedies From Federal Regulatory Statutes, 77 Harv.L. Rev. 285, 292 (1963).

*Id.* at 182. This language was interpreted by later courts to allow a private cause of action. *Van Alen v. Dominick & Dominick, Inc.,* 560 F.2d 547 (2nd Cir.1977); *Rolf v. Blyth Eastman Dillon & Co., Inc.* 424 F.Supp. 1021 (S.D.N.Y.1977).

The determinative issue is what Congress intended. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). To determine congressional intent you must look at four elements:

> Is plaintiff one of the class for whose especial benefit the statute was enacted; —that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

Applying the *Cort* criteria, this court determines a private right of action does exist under the NYSE or NASD rules. The Se-

curities Exchange Acts of 1933 and 1934 were enacted to protect the public from the abuses which led to the Stock Market Crash of 1929. Congress' first intent was to promulgate rules for the exchanges themselves, in addition to the Acts and regulations. However, Congress determined "that so delicate a mechanism as the modern stock exchange cannot be regulated efficiently under a rigid statutory program". Senate Report No. 792; 73D Congress 2d Session; S. 3420. Instead Congress required the exchanges themselves to promulgate rules consistent with the Securities Acts. Congress' sole intent in doing so was to protect the public. Congress further found:

> Experience with State laws designed to prevent the exploitation of the investor by supervision of the sale of securities has demonstrated the inadequacy of criminal penalties as the sole sanction. Customers are ordinarily reluctant to resort to criminal proceedings, and in the absence of complaints by them, the discovery of violations is often impossible. Furthermore, if an investor has suffered loss by reason of illicit practices, it is equitable that he should be allowed to recover damages from the guilty party. With these considerations in view, the bill provides that any person who unlawfully manipulates the price of a security, or who induces transactions in a security by means of false or misleading statements, or who makes a false or misleading statement in the report of a corporation, shall be liable in damages to those who have bought or sold the security at prices affected by such violation or statement. In such case the burden is on the plaintiff to show the violation or the fact that the statement was false or misleading, and that he relied thereon to his damage. The defendant may escape liability by showing that the statement was made in good faith. The party sued may recover contribution from any other person who would also be liable with respect to the same subject matter if separately sued.

## FRAUD

F.R.Civ.P. 9(b) requires that allegations of fraud in a complaint be pled with specificity. This rule serves three purposes: (1) it ensures that allegations are specific enough to inform defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; (2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs—a 9(b) claimant must know what his wrong is when he files; and (3) it seeks to protect the defendant from unknown charges of wrongdoing which injure their reputations and good will. *Benoay v. Decker*, 517 F.Supp. 490 (E.D. Mich.1981); *affd.*, 735 F.2d 1363 (6th Cir. 1984) citing *In Re Commonwealth Oil*, 467 F.Supp. 227 (W.D.Tex.1979). Plaintiffs' complaint does not seek to recover for unknown wrongs and gives each defendant notice of the specific conduct alleged against them. Thus, the complaint is sufficient to withstand E.F. Hutton's motion to dismiss.

## RICO

18 U.S.C. § 1964 provides civil remedies for private parties aggrieved by violations of section 1962 of Title 18. Section 1964 allows these aggrieved individuals to recover threefold the damages sustained, the cost of the suit and a reasonable attorney's fee. Among other crimes, 18 U.S.C. § 1962 proscribes "any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." Racketeering activity includes any offense involving fraud in the scale of securities. 18 U.S.C. § 1961(1)(D). Racketeering activity "forms a pattern if it embraces criminal acts that have the same or similar purpose, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, fn. 14, 87 L.Ed.2d 346 (1985).

In this action, E.F. Hutton is an enterprise within the definition of 18 U.S.C. § 1961(4). E.F. Hutton engages in securities transactions which affect interstate commerce. Alan Piedmonte was employed by E.F. Hutton. On at least two separate occasions according to the allegations of plaintiffs' complaint (which must be assumed true for purposes of a motion to dismiss) Piedmonte took money from investors, represented that he would make certain investments and either failed to make the investment or later liquidated the investments and converted the funds. The allegations in plaintiffs' complaints indicate that Piedmonte's acts were not isolated events but form a pattern of similar acts which are interrelated. Clearly, Piedmonte's activities fit within the acts protected by § 1964.

As Piedmonte's employer, E.F. Hutton may be equally liable under the doctrine of *respondeat superior* if plaintiff can establish that E.F. Hutton benefited from Piedmonte's acts, or had reason to question the manner in which Piedmonte dealt with customers or their accounts. As the court stated in *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1085 (D.Del.1984).

> When conduct is proscribed by a federal statute and civil liability for that conduct is explicitly or implicity imposed, normal rules of agency law apply in the absence of some indication that Congress had a contrary intent ... I perceive nothing in RICO or its legislative history which would suggest that the normal rules of agency law should not apply to the civil liability created by that statute....

See also *Hunt v. Weatherbee*, 626 F.Supp. 1097 (D.Mass.1986). Therefore, E.F. Hutton's motion to dismiss count eight of plaintiff's complaints must be denied.