**Linda Jane ROBINSON, Plaintiff,**

v.

**KIDDER, PEABODY AND COMPANY, INCORPORATED, and Terry Cross, Defendants.**

Civ. No. 87–CV–70302–DT.

United States District Court, E.D. Michigan, S.D.

July 2, 1987.

Gary Rossi, Bloomfield Hills, Mich., for plaintiff.

S. Allen Early, Detroit, Mich., for defendants.

## ORDER AND OPINION

COHN, District Judge.

### I.

This is an action under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq.*, the 1933 Securities Act, 15 U.S.C. § 77a *et seq.*, and the 1934 Securities Exchange Act, 15 U.S.C. § 78a *et seq.*, together with pendent state claims. Plaintiffs, mother and daughter, allege that they were unsophisticated investors with no prior experience in the stock market. In 1979, plaintiffs opened one investment account each with Kidder, Peabody through its agent/broker, defendant Cross. They allege that Cross traded on the account for his personal benefit and without concern for plaintiffs' legitimate investment needs (*i.e.*, "churning"). The relevant counts on the motion before the Court are Counts III and IV alleging violation of RICO (one count for each plaintiff).

On February 23, 1987, defendants moved to dismiss the RICO counts for failure to state a claim, Fed.R.Civ.P. 12(b)(6), or to require a more particular statement, Fed.R.Civ.P. 12(e). On March 5, plaintiffs filed a response arguing why the RICO counts met pleading standards. On March 11, the Court entered its standard order requiring that plaintiffs file a "RICO Case Statement" setting forth the factual and legal predicate for Counts III and IV. Plaintiffs filed their statement on March 26. Plaintiffs' RICO case statement indicates that they rely exclusively on 18 U.S.C. § 1962(c).[1] At this time, plaintiffs have no reason to believe that defendants violated

---

1. "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts."

18 U.S.C. § 1962(a), (b), or (d)—the other major RICO provisions.

Defendants responded with a supplemental brief arguing that: 1) a "pattern" of racketeering has not been alleged because plaintiffs simply rely on one alleged scheme implemented through a few acts; 2) RICO requires the "enterprise" to be distinct from the defendants; and 3) the enterprise must have an existence separate and apart from the pattern of racketeering activity. On April 22, plaintiffs responded to defendants' supplemental brief. Argument was heard on the motion on June 1, followed by further argument on June 22 at the Court's request.

For the following reasons, defendants' motion to dismiss Counts III and IV in their entirety is DENIED, and defendant Kidder, Peabody's motion to be dismissed as a defendant is GRANTED. While an allegation of churning on two accounts states a "pattern" under RICO, the enterprise cannot be joined as a defendant. Further, while the legal entity of Kidder, Peabody is an enterprise distinct from the alleged pattern of racketeering, an amendment to state an association in fact enterprise between Cross and Kidder, Peabody would be futile since that enterprise would not have an existence apart from the alleged pattern of racketeering.

## II.

### A.

▮ The first issue is whether the conduct of churning alleged by plaintiffs supports the RICO requirement of a "pattern." Section 1962(b) states that a "pattern of racketeering activity" requires at least two acts of racketeering activity. Section 1962(a) defines "racketeering activity" to include mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. Defendants do not challenge the sufficiency of plaintiffs' allegations of "predicate acts."

Plaintiffs allege that, from March of 1979 to July of 1984, defendants engaged in two or more [2] instances of fraud in the sale of securities. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court discussed the previously unexplored "pattern" requirement. While not issuing a definitive interpretation of that requirement, the Court concluded that the two or more acts must not be isolated or sporadic. The test is "continuity plus relationship." Various factors include whether the criminal acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14 (citation omitted).

The Court of Appeals for the Sixth Circuit has not interpreted the "pattern" requirement. Several judges of this district have interpreted it narrowly to require that the criminal acts be in furtherance of more than one criminal scheme. *See National Business Funding, Inc. v. Custom Muffler Specialists, Inc.*, 675 F.Supp. 1080 (E.D. Mich. 1987); *In re Evening News Ass'n Tender Offer Litigation*, 642 F.Supp. 860 (E.D.Mich.1986); *Zahra v. Charles*, 639 F.Supp. 1405 (E.D.Mich.1986); *Barris v. Farmer*, slip op., No. 83–1873 (E.D.Mich. Nov. 17, 1986). However, in the wake of *Sedima* it is clear that a case-by-case analysis of the facts in each case is appropriate to a determination of whether the "pattern" requirement has been satisfactorily pleaded.

Despite the Supreme Court's invitation in *Sedima's* dictum to construe the "pattern" requirement narrowly, the trend in some courts has been in the opposite direction. In *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986), the Court of Appeals for the Seventh Circuit held that the predicate acts need not "always occur as part of separate schemes in order to satisfy the continuity aspect of the pattern requirement...." *Id.* at 975–96. The test is whether the predicate acts "can fairly be viewed as constituting separate transac-

---

**2.** The complaint alleges that defendants engaged in 291 and 280 transactions on each plaintiff's account, respectively, although the complaint does not allege that every one of these transactions was unlawful and solely for defendants' own benefit.

tions, *i.e.*, 'transactions "somewhat separated in time and place." ' " *Id.* (citations omitted). The *Morgan* court held that several acts of mail fraud constituted a "pattern" because they were distinct, some relating to separate foreclosure sales, while others were related to allegedly fraudulent statements made in connection with the original loan transaction involved there. This more liberal interpretation of RICO's "pattern" requirement has also found acceptance in other circuits. *See Soper v. Simmons Int'l, Ltd.,* 632 F.Supp. 244, 250–55 (S.D.N.Y.1986) (discussing cases). *But see* Note, *Civil RICO; Restrictive Interpretations of a "Pattern" in Light of* Sedima, S.P.R.L. v. Imrex Co., Inc., 64 U.Det.L. Rev. 201 (1986) (expressing contrary interpretation of trend).

While defendants merely argue from general definitions in the case law as to what constitutes a RICO "pattern," plaintiffs have cited numerous cases on point finding that allegations of churning, if well pleaded, state a RICO "pattern." *E.g., Levine v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391 (S.D.N.Y. 1986); *Smith v. Oppenheimer and Co., Inc.,* 635 F.Supp. 936 (W.D.Mich.1985); *Bale v. Dean Witter Reynolds, Inc.,* 627 F.Supp. 650 (D.Minn.1986); *Nunes v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 609 F.Supp. 1055 (D.Md.1985); *Binkley v. Sheaffer,* 609 F.Supp. 601 (E.D.Pa.1985); *Roche v. E.F. Hutton & Co., Inc.,* 603 F.Supp. 1411 (M.D.Pa.1984). Defendants offer no churning cases to the contrary. Given the limited case discussion offered by defendants and the plethora of cases on point cited by plaintiffs, defendants have not made a convincing case for dismissing Counts III and IV in their entirety. "These are not two isolated acts. of racketeering activity, nor do they consist of one criminal act divided up into component parts in order to satisfy the quantitative demands of the RICO statute." *Levine, supra,* 639 F.Supp. at 1396.

### B.

■ Furthermore, plaintiffs have described the churning with the requisite specificity for fraud claims. Fed.R.Civ.P.

9(b) and 12(e). Plaintiffs allege the beginning and ending dates of the churning, their account numbers, their average equity account values, their total average account values, the number of transactions, the dollar total of purchases, the turnover ratio of the equity account values, the turnover ratio of the entire accounts, the dollar total of commissions, the percentage of the equity account values paid in commissions, and the percentage of total average account values paid in commissions. This is sufficient to put defendants on notice of the claims against them, and it is not necessary to allege each and every transaction involved. *Nunes, supra,* 609 F.Supp. at 1065; *Binkley, supra,* 609 F.Supp. at 603–04; *Finn v. Davis,* 602 F.Supp. 801, 805 (S.D.Fla.1985); *Roche, supra,* 603 F.Supp. at 1416–17 & nn. 3–5.

### III.

■ Plaintiffs say that Kidder, Peabody is the enterprise under the statute. Section 1962(c) defines an "enterprise" to include any group of individuals associated in fact. The enterprise and the alleged pattern of racketeering cannot have a singular existence. *See U.S. v. Turkette,* 452 U.S. 576, 582–83, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). That is, the mere commission of some felonies by a few persons cannot constitute an "enterprise" if there is no other infrastructure between them in support of a continuing relationship.

■ Paragraphs 6b and 7 of plaintiffs' RICO Case Statement satisfy this pleading requirement. Kidder, Peabody is alleged to have an existence (trading in securities) separate and apart from the racketeering claimed by plaintiffs (fraudulent trading in securities). Defendants mischaracterize plaintiffs' complaint as alleging that the racketeering activity is the "sale of securities," which would be synonymous with Kidder, Peabody's existence as an enterprise and thus fail to meet the "separate and apart" requirement. On the contrary, plaintiffs more specifically plead that the racketeering occurred in *unnecessary* trading in securities, a fraudulent and narrower

aspect of the enterprise's normal activities. Plaintiffs have thus alleged that Kidder, Peabody has a "separate economic existence from the alleged pattern of racketeering." *Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 357 (E.D.Mich. 1983). Contrary to defendants' suggestion, the racketeering pattern alleged by plaintiffs is *not* the only unifying component of the enterprise. Kidder, Peabody exists as an economic unit separate and apart from the wire and mail fraud pattern of racketeering alleged by plaintiffs.

## IV.

■ Section 1962(c) imposes liability on "any person employed by or associated with any enterprise...." Kidder, Peabody argues that the statutory language precludes naming the "enterprise" itself as a defendant, since only a "person" employed by or associated with the enterprise can be held liable under the language of section 1962(c).

■ The courts have been virtually unanimous in holding that a defendant may not be simultaneously the "enterprise" and a "person" who conducts the affairs of the enterprise through a pattern of racketeering activity. *See Levine, supra,* 639 F.Supp. at 1395 (collecting cases); Note, *The Proper Application of Civil RICO to Patent Fraud,* 96 Yale L.J. 1323, 1341 n. 127 (1987) (collecting cases); 2 Civil RICO Report (BNA) 1, 2 & n. 8 (May 5, 1987) (collecting cases). Only one Circuit of the Court of Appeals has reached an opposite conclusion. *United States v. Hartley,* 678 F.2d 961 (11th Cir.1982), *reh'g denied,* 688 F.2d 852 (1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). Perhaps the best statement of the majority rule is found in the seminal case of *United States v. Computer Sciences Corporation,* 689 F.2d 1181 (4th Cir.1982):

> We conclude that "enterprise" was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and, failing that, to punish. To be sure, the analogy between individuals and fictive persons such as corporations

is not exact. Still, we would not take seriously, in the absence, at least, of very explicit statutory language, an assertion that a defendant could conspire with his right arm, which held, aimed and fired the fatal weapon.

*Id.* at 1190.

Plaintiffs rely on *Ross v. Omnibusch, Inc.,* 607 F.Supp. 835 (W.D.Mich.1984) (cited in *Bale, supra* ), for the proposition that the enterprise may be joined as a defendant if the "person" is a co-defendant. The reasoning of *Ross* is cursory and does not persuade the Court to adopt this minority rule. The *Ross* court did no more than distinguish a case widely cited for the majority rule, *Bennett v. Berg,* 685 F.2d 1053, 1059–60 (8th Cir.1982), *aff'd in pertinent part on reh'g,* 710 F.2d 1361 (en banc), *cert. denied sub nom. Prudential Ins. Co. v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). The *Ross* court concluded that *Bennett v. Berg* "did not hold that an enterprise cannot be a defendant, but rather that an enterprise must be alleged apart from the culpable 'person' who 'associated with' it for racketeering purposes." 607 F.Supp. at 837–38. Thus, according to the *Ross* court, an enterprise may be a defendant as long as one of the other defendants is the "person" subjected to liability under section 1962(c).

■ While the opinion in *Bennett v. Berg* may be so read, neither the opinion in *Ross* nor plaintiffs' argument is persuasive for rejecting the majority rule. Accordingly, the Court agrees with Kidder, Peabody's reliance on the majority rule than an enterprise may not be a defendant under section 1962(c). *See Barker, supra,* 564 F.Supp. at 357 (E.D.Mich.) (adopting majority rule). *But see Woods v. Piedmonte,* 676 F.Supp. 143, (E.D.Mich. 1987) (denying brokerage house's motion to dismiss in churning case on basis of respondeat superior liability for employee's conduct) (quoting *Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1085 (D.Del.1984)). Alternative theories of imposing liability on the enterprise, such as respondeat superior, are at odds with the purpose and language of RICO:

[S]ome courts have imposed *direct* RICO liability on legitimate businesses when they are alleged to be both the "person" violating the statute (through the acts of their employees and agents) and the affected "enterprise." ... [S]ome courts have held legitimate businesses *vicariously* liable under RICO for the acts of their lower-level employees and agents under traditional principles of *respondeat superior.*

Under both lines of authority, courts have justified the imposition of liability on legitimate businesses for the acts of their agents or employees on the ground that "culpable" entities should not escape liability under RICO. In attempting to effectuate that goal, however, these courts have paid insufficient attention to what actually constitutes a "culpable" entity under RICO, as evidenced by RICO's express statutory language and its underlying purposes. Indeed, these courts have painted with such a broad brush that they have created a costly anomaly: a statute enacted for the primary purpose of protecting legitimate businesses from infiltration by outside criminal interests has created liability for the infiltrated entity.

2 Civil RICO Report, *supra,* at 1 & n. 6.

Since plaintiffs have described Kidder, Peabody as the RICO "enterprise," it must be dismissed.

### V.

At the hearing on June 22, plaintiffs requested leave to amend to define the enterprise as an association in fact between Cross and Kidder, Peabody. Under this theory, Kidder, Peabody could be a defendant because it would not be synonymous with the enterprise.

■ Leave to amend should be freely granted where justice requires. Fed.R.Civ. P. 15(a). The motion is left to the sound discretion of the Court, *see Estes v. Kentucky Utilities Co.,* 636 F.2d 1131, 1133 (6th Cir.1980), and may be denied where amendment would be futile, *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). It would be futile to allow the proposed amendment here; as discussed below, the federal claim would be dismissed under Rule 12(b)(6) for failure to state a claim. Where a proposed amendment would be subject to a Rule 12(b)(6) motion to dismiss, leave to amend may be denied rather than allowing the amendment only to be faced with the inevitable 12(b)(6) motion later. 3 J. Moore, *Federal Practice* ¶ 15.08[4], at 108–10; *see also* 6 *Wright & Miller,* § 1487, at 433 (1977).

■ Plaintiffs allege only a passive role by Kidder, Peabody, *i.e.,* that it allowed Cross to churn on their accounts. This is not the proper set of facts for recognizing Kidder, Peabody as a component of an association in fact. First, there is no allegation of fraudulent activity by Kidder, Peabody but rather only negligence in failing to discover and stop Cross's improper activities. Second, the broker is a lower-level employee of Kidder, Peabody and not one of its officers with significant influence or control over its affairs. Third, Kidder, Peabody has a legitimate existence apart from the alleged pattern of racketeering, and plaintiffs do not argue that it exists solely as a thinly-veiled alter ego constructed to insulate a wrongdoer. Finally, when considering these factors, it is not improper to note that plaintiffs seek to join Kidder, Peabody as a "deep pocket." *See* McArthur & White, *Civil RICO After Sedima: The New Weapon Against Business Fraud,* 23 Hous.L.Rev. 742, 753–55 (1986); Note, *RICO: The Corporation as "Enterprise" and Defendant,* 52 U.Cin.L.Rev. 503 (1983). Plaintiffs have simply not pleaded facts that would justify subverting the majority rule against allowing the joinder of the enterprise as a defendant.

■ Finally, an association in fact between Kidder, Peabody and Cross for purposes of churning would have no existence apart from the alleged pattern of racketeering. (There is no suggestion that Kidder, Peabody and Cross constituted an association in fact for purposes of committing other illegal acts beyond the scope of the

pattern alleged by plaintiffs.)  *See Barker, supra,* 564 F.Supp. at 357.

SO ORDERED.[3]

---

**3.** The dismissal of Kidder, Peabody is without prejudice to plaintiffs' right to rename Kidder, Peabody as a defendant should discovery suggest a violation of section 1962(a) (i.e., if a "person" engaged in racketeering invested in the enterprise). Although the Court need not decide the issue at this time, there is some support for the view that the "enterprise" is a proper defendant under section 1962(a). *See, e.g., Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 747 F.2d 384, 401–02 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).