Sidney SILVERMAN, Lee Silverman,
Barry P. August, Samuel August,
and Judi Ellias, Plaintiffs,

v.

Thomas R. NISWONGER, George F. Field, Jr., Field Corporation, a Michigan corporation, Your Attic, Inc., a Michigan corporation, Your Attic Properties, Inc., a Michigan corporation, Your Attic Management, Inc., a Michigan corporation, Your Attic of Clinton Township, a Michigan limited partnership, and Your Attic of Tampa, a Florida limited partnership, Jointly and Severally, Defendants.

No. 89–73095.

United States District Court,
E.D. Michigan, S.D.

March 1, 1991.

Richard Partich, Southfield, Mich., for plaintiffs.

William Garratt, Bloomfield Hills, Mich., George Field, West Bloomfield, Mich., for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a securities fraud case. Plaintiffs Sidney Silverman, Lee Silverman, Barry P. August, Samuel August, and Judi Ellias (collectively, plaintiffs) allege that defendants George F. Field, Jr. (Field); Thomas R. Niswonger (Niswonger); Field Corporation; Your Attic, Inc. (YAI); Your Attic Properties, Inc. (YAP); Your Attic Management, Inc. (YAM); Your Attic of Clinton Township, Limited Partnership (YAC); and Your Attic of Tampa, Limited Partnership (YAT); all participated in a scheme to defraud them out of $87,500 that they invested in three and a half units of the YAC partnership. On October 16, 1989, plaintiffs filed a six-count complaint against all of the defendants except Niswonger. In the complaint, the plaintiffs sought recovery under Sections 12 and 17(a) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. §§ 77l, 77q(a), and under Sections 15(1) and 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. §§ 78j(b), 78o (Count I); under the Michigan Uniform Securities Act, Mich. Stat.Ann. § 19.776(101) *et seq.* [Mich.C.L.A. § 451.501 et seq.], and under Florida Blue Sky Laws, Fla.Stat.Ann. § 517.301 (Count II); under the Michigan Consumer Protection Act (MCPA), Mich.Stat.Ann. § 19.418(1) *et seq.* [Mich.C.L.A. § 445.901 et seq.] (Count III); for common law fraud (Count IV); under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (Count V); and for common law negligence and breach of fiduciary duty (Count VI). On March 2, 1990, plaintiffs filed a pleading styled "First Amended Complaint," adding Niswonger as a defendant but not adding new theories of recovery.

Now before the Court is a motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), filed on behalf of all of the defendants except Field, Field Corporation, and YAC.[1] While the papers filed by the Non-Field defendants reference Fed.R.Civ.P. 56, they do not refer to any matters outside the pleadings. Therefore, Rule 56 is inapplicable. The Non-Field defendants argue that: 1) plaintiffs' claims under § 12 of the 1933 Act are time-barred; 2) plaintiffs'

---

1. The Court will refer to the movants as "the Non-Field defendants."

claims under § 17(a) of the 1933 Act should be dismissed because no private right of action exists under that section of the 1933 Act; 3) plaintiffs' claims under § 10(b) of the 1934 Act do not meet the pleading requirements of Fed.R.Civ.P. 9(b); 4) plaintiffs' claims under the Michigan Uniform Securities Act are time-barred; 5) plaintiffs have not alleged a pattern of racketeering sufficient to sustain a RICO claim; 6) that plaintiffs' claims fall outside the scope of the MCPA; 7) that plaintiffs' common law fraud claims do not meet the pleading requirements of Fed.R.Civ.P. 9(b); 8) that plaintiffs' claims under Florida Blue Sky Laws are time-barred; 9) that the Non–Field defendants are not liable for any breach of fiduciary duty committed by Field; and 10) that, because plaintiffs cannot state a federal claim, the Court has no jurisdiction over the state law claims raised. In response, plaintiffs concede that they do not have a private right of action under § 17(a) of the 1933 Act.[2] However, they argue that: 1) their fraud claims comply with Rule 9(b); 2) their Blue Sky Law claims are not time-barred; 3) they have stated a RICO claim; 4) the MCPA applies to securities cases; and 5) they have stated a claim for negligence and breach of fiduciary duty against Niswonger. For the reasons that follow, the Non–Field defendants' motion is GRANTED in part and DENIED in part.

## II.

Plaintiffs' first amended complaint makes the following allegations. Sidney Silverman, Lee Silverman, Barry P. August, and Samuel August reside in Oakland County, Michigan. Judi Ellias resides in Colorado Springs, Colorado. Field resides in Bloomfield Hills, Michigan. Niswonger resides in Washtenaw County, Michigan.

Field Corporation, YAI, YAP, and YAM are Michigan corporations affiliated with and controlled by Field, with their principal place of business in Troy, Michigan. YAC is a Michigan limited partnership affiliated with and controlled by Field, with its principal place of business in Troy, Michigan. YAT is a Florida limited partnership affiliated with and controlled by Field and Niswonger, with its principal place of business in Troy, Michigan.

As a result of solicitations and representations by Field beginning in December 1985 and continuing through February 1986, plaintiffs purchased a total of three and a half units, at the price of $25,000 per unit, in a private offering for YAC. Sidney Silverman and Lee Silverman each purchased one unit. Barry P. August and Samuel August each purchased a half unit, and Judi Ellias purchased a half unit. Field represented verbally and in writing that the purpose of YAC was to build and operate a 91,300 square foot mini-storage facility in Clinton Township, Michigan.

The private placement memorandum for the YAC offering stated only that the project site was owned by a non affiliate of YAC. It did not disclose any contingencies concerning the acquisition of the project site. On January 25, 1986, Sidney Silverman was told by Field that YAC was having difficulty acquiring title to the project site from its owners, but Field said that the difficulties could be resolved. On April 2, 1986, Field informed plaintiffs that all units of YAC had been sold, but there would be a delay in the start of construction due to a problem with relocating a drainage ditch on the site. Field also stated that all permits had been obtained and assured them construction would commence shortly.

On September 24, 1986, plaintiffs received another letter from YAC indicating that construction had commenced and that

<hr />

**2.** In their response to the Non–Field defendants' motion to dismiss, plaintiffs state that they have stipulated to dismiss the portion of Count I of their first amended complaint seeking relief under Section 17(a) of the 1933 Act, 15 U.S.C. § 77q. Plaintiffs then state that, as a result of the stipulation, they do not need to address the Non–Field defendants' arguments that an action under the 1933 Act is time-barred. However, it

is clear from the papers of the Non–Field defendants that these statute of limitations arguments apply to plaintiffs' claim for relief under Section 12 of the 1933 Act, 15 U.S.C. § 77*l*, not Section 17(a). Neither party has acknowledged this discrepancy, but unless otherwise notified, the Court will assume that all claims under the 1933 Act are no longer part of the case.

it would be completed before winter. Plaintiffs then made numerous attempts to contact Field to inquire about the status of the project. On January 14, 1987, Sidney Silverman contacted Field who informed him that construction still had not begun. On February 11, 1987, Field told plaintiffs, at a meeting in his office, that unresolved difficulties with the sellers of the project site rendered the project "dead in the water." Field never explained whether YAC had obtained title or begun construction.

Field then used the meeting to convince plaintiffs to invest in the YAT project. He coerced and manipulated plaintiffs into transferring their investment in YAC to YAT, a project that he said was not subject to any delays or impediments. Field also told plaintiffs that all of the funds previously invested with YAC were safe and intact and being held for their benefit. Plaintiffs agreed to transfer their funds from YAC to YAT in a letter dated February 11, 1987. On March 27, 1987, plaintiffs received confirmation of the transfer.

Like the private placement memorandum for YAC, the private placement memorandum for YAT did not disclose the status of the project site. Nor did it disclose any potential problems with financing or that Niswonger was a general partner. The memorandum stated only that YAT "will acquire the project site."

Construction began on the YAT project site in August 1987. On January 23, 1988, plaintiffs received a letter from YAT that the project had been halted because of approval requirements and a need for re-engineering. On May 2, 1988, plaintiffs were notified that the YAT project was delayed due to its inability to obtain financing and that there was a shortage of equity funding despite Field's prior representations that the project was not subject to any delays or impediments.

In soliciting plaintiffs' investment, neither Field nor Niswonger disclosed that YAT was without sufficient equity funding because the minimum number of units had not been sold. On May 12, 1988, at a meeting of investors in YAT, Field reported that construction was at a standstill but that the land value had appreciated significantly. As a result, he stated that he was negotiating to sell the land at a price that would provide plaintiffs with a substantial return on their investment. Plaintiffs never received word on whether a sale took place.

From July 12, 1988 on, Field, Niswonger, and the other defendants have failed to return plaintiffs' telephone calls, advise them of the status of their investments, or account for the funds invested. After filing an action for an accounting filed in Oakland County Circuit Court, plaintiffs learned that YAT had received a $2.2 million loan from Florida National Bank, of which $651,617 was used to acquire the property for the YAT project on January 15, 1986. The YAT private placement memorandum made no mention of this method of financing or the impact the mortgage would have on an investor's return.

Plaintiffs also learned that, on February 15, 1987, YAT requested that Florida National Bank increase the loan to $2.65 million based on the representation that equity funding was complete and that YAT had raised $800,000, even though it had raised only $240,000. Despite YAT's inability to raise necessary funding, Field and the other defendants were paid substantial fees for a variety of services: from February 2, 1987 through May 22, 1987, Field received $82,612.75 in general partner's fees; from January 8, 1987 through May 20, 1987, YAP received $110,000 in development fees; on February 27, 1987, YAI received a license fee payment of $40,000; from February 12, 1987 through May 28, 1987, YAI received $30,000 in architecture fees; from November 19, 1987, YAP received $39,300 in construction fees. Other fees totalling $44,414.73 may have been paid to Niswonger and/or YAM. No disclosure of these payments was made to plaintiffs by any of the defendants.

Plaintiffs believe similar payments were made by YAC even though the project was never begun.

YAT also loaned certain defendants $12,398.

## III.

### A.

■ The Non–Field defendants[3] seek dismissal of a portion of Count I, the portion alleging a violation of section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and of Count IV on the ground that plaintiffs have not pleaded fraud with the particularity required by Fed.R.Civ.P. 9(b). Under Rule 9(b), plaintiffs must allege the time, place, and contents of the misrepresentations upon which they relied in order to make out a fraud claim. *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984); *Leoni v. Rogers,* 719 F.Supp. 555 (E.D.Mich.1989). In addition, in order to plead a violation of § 10(b), plaintiffs must allege that the Non–Field defendants acted intentionally or with scienter. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). "Although scienter need not be alleged with great specificity ... there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent." *Ouaknine v. MacFarlane,* 897 F.2d 75, 79–80 (2d Cir.1990).

■ The Non–Field defendants' position is essentially that, while plaintiffs' first amended complaint may state a fraud or § 10(b) claim against Field, Field Corp., and YAC, it makes no specific allegations against them. This is untrue. The complaint alleges that YAP, YAI, and YAM all wrongfully received payments from YAT despite the fact that sufficient funding to complete the YAT project had not been raised. In light of these allegations and the as yet unexplained relationships linking YAP, YAI, and YAM with Field, the Court will not dismiss the fraud claims against YAP, YAI, and YAM.

■ As to Niswonger and YAT, the allegations are even more compelling. Niswonger and Field were both general partners of YAT. While Niswonger remains something of a shadowy figure because he apparently did not deal directly with plaintiffs and because his name did not appear on the YAT private placement memorandum, he cannot escape liability for the alleged wrongdoing by Field on behalf of YAT. Under Michigan law, general partners of a limited partnership have the same liabilities to persons outside the partnership as partners in a partnership without limited partners. Mich.Stat.Ann. § 20.1403(b) [Mich.C.L.A. § 449.1403(b)] (Callaghan 1990). Partnerships are liable for the wrongful acts of a partner and for the misapplication of money by a partner, when they occur in the ordinary course of business of the partnership. Mich.Stat. Ann. §§ 20.13, 20.14 [Mich.C.L.A. §§ 449.13, 449.14] (Callaghan 1990). In turn, the partners are jointly and severally liable for everything chargeable to the partnership as a result of a partner's misdeeds in the ordinary course of business of the partnership. Mich.Stat.Ann. § 20.15 [Mich.C.L.A. § 449.15] (Callaghan 1990).

■ Niswonger and YAT claim that any fraudulent actions by Field cannot be considered to be within the ordinary business of the partnership. This misstates the law. The liability of one partner for the acts of another partner is analogous to the liability of a principal for the acts of an agent. *Meleski v. Pinero Int'l Restaurant, Inc.,* 47 Md.App. 526, 424 A.2d 784, 790 (1981). Based on the pleadings alone, the Court cannot say that Field was engaged in some sort of "frolic," acting outside the scope of his authority as a general partner of YAT without Niswonger's knowledge. Niswonger and YAT may be able to show at the summary judgment

---

**3.** In their answer to plaintiffs' first amended complaint, the Non–Field defendants denied that Field had any affiliation with or control of YAI, YAP, and YAM. However, the Court is suspicious of this denial because a group of plaintiffs, including Niswonger and YAT, sued Field, YAI, YAP, and YAM in Circuit Court in Oakland County, Michigan (Civil Action No. 89–375963–CZ). In their allegations, Niswonger et al. stated that Field was the largest shareholder of YAI, YAP, and YAM. Counsel for the Non–Field defendants has yet to explain why he is now representing YAI, YAP, and YAM, but not Field.

stage that Field was acting on his own, but they have not done so at this juncture.

Given that Field, Niswonger, and YAT are to be considered essentially as one, and that YAP, YAI, and YAM may be linked to them, the Court finds that the pleadings state fraud and § 10(b) claims against the Non–Field defendants with the requisite particularity. Plaintiffs have alleged the time, place, and content of a number of misrepresentations made by Field on behalf of YAT and in furtherance of a scheme that allegedly resulted in improper payments being made to YAP, YAI, and YAM. Furthermore, the nature and extent of the misrepresentations alleged gives rise to a strong inference of fraudulent intent. The Non–Field defendants' motion is DENIED on this ground.

### B.

■■■■ The Non–Field defendants argue that plaintiffs' claims under the Blue Sky Laws of both Michigan and Florida must be dismissed because they were filed after the expiration of the applicable limitations period. The Michigan Uniform Securities Act provides, in pertinent part that a person may not bring an action based on the misstatements or misrepresentations of a seller or offeror of securities "more than 2 years after such person, in the exercise of reasonable care, knew or should have known of the untruth or omission, but in no event more than 4 years after the contract of sale." Mich.Stat.Ann. § 19.776(410)(e) [Mich.C.L.A. § 451.810(e)] (Callaghan 1990). The analogous provision of Florida law also requires that a securities fraud action be brought within two years of discovery and no more than five years after the date of the violation. Fla.Stat.Ann. § 95.11(4)(e) (West 1990).

■■■■ In a display of extraordinary disingenuousness, the Non–Field defendants argue that plaintiffs should have known by February 11, 1987, the date that Field told them the YAC project was "dead in the water," of the falsity of the representations made to them by Field. This is unreasonable. Although the plaintiffs knew that the YAC project would not work, they had no reason to believe that the YAT project was not ready to go. The earliest possible date that plaintiffs should have suspected Field was May 2, 1988, the date when they learned that the YAT project had been halted due to its insufficient financing and a shortage of equity funding. Moreover, plaintiffs had no idea that they would not get their money back out of the YAT project until at least July 12, 1988, when Field stopped returning their telephone calls. Thus, the date by which plaintiffs were required to file their complaint was May 2, 1990. Because they filed before that deadline, the Non–Field defendants' motion is DENIED as to plaintiffs' Michigan and Florida Blue Sky Law claims.

### C.

In addition, the Non–Field defendants contend that plaintiffs have failed to plead a RICO claim because the allegations of their first amended complaint, if proven, do not show a pattern of racketeering activity, 18 U.S.C. § 1962(b), that has caused injury to them. After examining the complaint and the plaintiffs' RICO case statement, the Court is satisfied that the plaintiffs have stated a RICO claim.

■■■■ A pattern requires at least two acts of racketeering activity, 18 U.S.C. § 1961(5). Here, the activity complained of arises out of one investment in a limited partnership made by the plaintiffs. However, allegations of separate illegal schemes are not required in order to show a pattern for the purpose of stating a RICO claim. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195, 206 (1989). The Non–Field defendants argue that the case resembles *Bruce v. Martin*, 691 F.Supp. 716 (S.D.N.Y.1988), in which the district court held that allegations that defendants fraudulently induced plaintiffs to participate in a one-time investment in a limited partnership were insufficient to establish a pattern of racketeering activity. In their papers, plaintiffs respond by attempting to distinguish *Bruce* on its facts, asserting that the fraudulent acts alleged here continued on after the initial inducement and involved a variety of racketeering

activities. According to plaintiffs' complaint, not only did the defendants misrepresent the risks of investment, but they also diverted the funds invested and jeopardized the funds invested by making false representations to the Florida National Bank in order to increase the size of the mortgage on the YAT project site.

■■■■ If the activities alleged form a pattern embracing other acts that have the same or similar purposes, results, participants, victims, or methods of commission, and the allegations show that the activities described are a regular way of conducting ongoing business, a RICO claim has been stated. *H.J. Inc.*, 492 U.S. at 238–243, 109 S.Ct. at 2900–02, 106 L.Ed.2d at 208–10. Plaintiffs' complaint alleges a set of circumstances in which Field, acting on behalf of YAC and YAT, fraudulently induced the plaintiffs to invest in two projects that he and the other principals in those partnerships may not ever have intended to build. At the very least, according to the allegations, they intended to utilize the facade of the partnerships to induce plaintiffs and at least one bank to provide them with money that they could divert to other enterprises for their own uses.

■■■ This is a pattern of racketeering sufficient to support a RICO claim. Where the actions alleged are neither isolated acts of racketeering activity nor a single criminal activity divided up into component parts, they constitute a pattern for RICO purposes. *See Robinson v. Kidder, Peabody & Co.*, 674 F.Supp. 243, 246 (E.D. Mich.1987). As a result, the Non–Field defendants' motion is DENIED on this ground.

### D.

The Non–Field defendants also argue that plaintiffs' claim for violation of the MCPA should be dismissed because the MCPA is not applicable in this case. Specifically, they say that the MCPA exempts transactions or conduct, such as the sale of securities, specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of the State of Michigan or the United States. Mich.Stat.Ann. § 19.418(4) [Mich.C.L.A. § 445.904] (Callaghan 1990). The Non–Field defendants point out that the sale of securities in Michigan is regulated by the Michigan Uniform Securities Act, which is administered by the Corporation and Securities Bureau of the Michigan Department of Commerce. Mich.Stat.Ann. § 19.776(406)(a) [Mich.C.L.A. § 451.806(a)] (Callaghan 1990). Plaintiffs respond that a sale of securities pursuant to a private placement memorandum is not subject to the registration requirements of the Michigan Uniform Securities Act, *see* Mich.Stat. Ann. § 19.776(402)(b) [Mich.C.L.A. § 451.802(b)]; therefore, the transaction at issue here is not exempted from the MCPA's coverage.

■■■ In support of their position, plaintiffs rely on *Attorney General v. Diamond Mortgage Co.*, 414 Mich. 603, 617, 327 N.W.2d 805 (1982), in which the Michigan Supreme Court held that, despite the fact that a real estate broker was required by state law to obtain a license before conducting business, the activities of the broker were subject to the MCPA. The Non–Field defendants rely on *Kekel v. Allstate Ins. Co.*, 144 Mich.App. 379, 375 N.W.2d 455 (1985), which distinguished *Diamond Mortgage* by stating:

> The activities of the defendant in *Diamond* which the plaintiffs there were complaining of were not subject to any regulation under the real estate broker's license of the defendant and thus such conduct was not reviewable by the applicable licensing or regulatory authority. That is not true in this case. Allstate Insurance Company is subject to all of the provisions of the Insurance Code of 1956 including the Uniform Trade Practices Act of the Insurance Code.... The insurance industry is under the authority of the State Commissioner of Insurance and subject to the extensive statutory and regulatory scheme, all administered "by a regulatory board or officer acting under statutory authority of this state."

144 Mich.App. at 384, 375 N.W.2d 455. Based on this language, the Court finds

that the MCPA does not apply here. The fact that a particular type of security falls within an exception written into the statutory scheme adopted to regulate the sale of securities does not mean that type of security is unregulated or that the securities industry is not subject to elaborate state regulation. The manner in which the state regulates the securities industry cannot create a cause of action under the MCPA. Plaintiffs' MCPA claim is DISMISSED.

### E.

Finally, the Non–Field defendants contend that plaintiffs have failed to state a claim for negligence and breach of fiduciary duty. Plaintiffs respond that they seek relief on this ground from only Field and Niswonger. Defendants argue that Niswonger is not liable for the fraudulent actions of Field. Based on its analysis in Part III.A, the Court disagrees. The Non–Field defendants' motion is DENIED on this ground.

### F.

Because plaintiffs have stated a federal claim, the Non–Field defendants' argument that the Court lacks subject matter jurisdiction over plaintiffs' state law claims is MOOT.

### IV.

■ Plaintiffs also have filed a motion for summary judgment as to Count VI of their first amended complaint, their claim for negligence and breach of fiduciary duty against Field and Niswonger. As noted above in Part III.E, plaintiffs have stated a cognizable claim for relief in Count VI. They base their motion for summary judgment on the allegations contained in a complaint filed by Niswonger and YAT against Field in Oakland County Circuit Court. If true, the allegations establish that Field engaged fraudulent transfers, paid YAT partnership funds to YAP that were not earned, and withdrew from YAT fees that were not earned. What they *may* also establish is that Field was acting on his own and without Niswonger's knowledge, thereby negating any liability on the part of Niswonger, *see* Part III.A, *supra*. At a minimum, this is an unresolved issue of material fact. Indeed, the existence of such a crucial unresolved issue of material fact is evidence that the parties have not developed the record sufficiently for the Court to rule on a summary judgment motion. Plaintiffs' motion is DENIED without prejudice.

SO ORDERED.