Elbert E. ROSS and Beatrice M. Ross, Plaintiffs,

v.

OMNIBUSCH, INC., a foreign corporation; R.E. Busch d/b/a Dr. R.E. Busch, Dr. R.E. Busch Research Institute and Chicago Grain & Financial Futures, a foreign corporation, formerly Chicago Grain Company, Defendants.

No. K 84–72.

United States District Court, W.D. Michigan, S.D.

Nov. 9, 1984.

Barry Crown, Lansing, Mich., John Dolkert, Chicago, Ill., for plaintiffs.

Thomas Luning, Chicago, Ill., Grant Gruel, Grand Rapids, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

On October 22, 1984, the Court ruled from the Bench concerning several bases for dismissal or transfer raised by the Defendants in their Motion to Dismiss and their reply to Plaintiffs' response. The Court reserved for written Opinion those grounds Defendants assert in their motion for dismissing Count 7 of Plaintiffs' Complaint. This Opinion now addresses those grounds.

Count 7 alleges a violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. In their Motion to Dismiss, filed May 7, 1984, and their reply memorandum filed September 17, 1984, Defendants assert five bases for dismissing Count 7. These are, first, that Count 7 fails to allege fraud with the particularity required by Federal Rule of Civil Procedure (F.R.C.P.) 9(b); second, that Plaintiffs fail to allege an enterprise pursuant to 18 U.S.C. § 1962(c) and § 1961(4) which is separate from the Defendants and the pattern of racketeering; third, that Plaintiffs fail to assert the racketeering injury they argue is required by 18 U.S.C. § 1964(c); fourth, that no civil

RICO action lies where there has been no criminal conviction of the predicate acts that constitute the pattern of racketeering activities; and fifth, that no civil RICO action can survive without an allegation of organized crime's involvement. The Court will address each of these *seriatum.*

### Standard

In reviewing the instant motion, the Court's inquiry at this point of the proceedings is limited to whether or not the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. In making this determination, all allegations in the pleadings are to be taken at "face value" and should be construed in a light most favorable to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *California Motor Transport Company v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972). As stated by the Court of Appeals for the Sixth Circuit: "Well pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co., Inc. v. Caribbean Utilities Company,* 513 F.2d 1176, 1182 (CA6 1975). All reasonable inferences which might be drawn from the pleadings must be indulged. *Fitzke v. Shappel,* 486 F.2d 1072, 1076 n. 6 (CA6 1972). No Complaint should be dismissed for failure to state a claim unless it appears that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### Fraud

■ The Court's October 22, 1984, oral ruling is dispositive of Defendants' argument that Plaintiffs fail to specifically plead fraud. Plaintiffs allege in Count 7 that Defendants violated RICO by using the mails two or more times in furtherance of their scheme to cheat and defraud them. Plaintiffs do not specify in Count 7 those facts which support their "scheme and de-fraud" allegation. However, in ¶¶ 10 and 11, and in Counts 1 and 2, Plaintiffs set out the basic facts of their fraud allegations. In its oral Opinion, the Court held these to meet the requirements of F.R.C.P. 9(b) pursuant to *Hagstrom v. Breutman,* 572 F.Supp. 692, 697 (DC Ill 1983). These factual allegations, together with the entire rest of the Complaint, are incorporated into Count 7 by ¶ 41. Therefore, Count 7 meets the requirements of F.R.C.P. 9(b) and Defendants' Motion to Dismiss on this ground is denied.

### Enterprise

■ 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1961 defines "enterprise", among other terms contained in 18 U.S.C. § 1962(c):

"Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity. 18 U.S.C. § 1961(4).

The existence of an enterprise is one of the elements which a plaintiff must prove to establish a RICO violation. *Bennett v. Berg,* 685 F.2d 1053, 1060 (CA8 1982). *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981).

■ Defendants make two arguments concerning Plaintiffs' asserted failure to sufficiently allege the enterprise element. In their first, Defendants rely principally on *Bennett, supra,* and assert that Plaintiffs must allege an enterprise distinct from the Defendants but have not done so. Defendants misstate the holding in *Bennett, supra.* The Court of Appeals did not hold that an enterprise cannot be a defendant, but rather that an enterprise must be

alleged apart from the culpable "person" who "associated with" it for racketeering purposes. *Bennett, supra* at 1061. As the court in *Van Schaick v. Church of Scientology*, 535 F.Supp. 1125, 1136 (DC Mass 1982) stated, RICO

> quite clearly envisions a relationship between a "person" and an "enterprise" as an element of the offense which 1962(c) proscribes for which 1964(c) would subject the "person" to treble damages.

Therefore, while the RICO enterprise may be a named defendant, one or more of the Defendants must be the "person" who acts upon the enterprise in such a way that the enterprise's affairs are conducted in the pattern of racketeering. *Bennett, supra* at 1061.

Here, Plaintiffs have asserted and incorporated into Count 7, allegations that Defendant R.E. Busch acted as the agent of both Defendant Omnibusch and Defendant Chicago Grain. In addition, Plaintiffs assert that Defendant Omnibusch acted as agent of Defendant Chicago Grain. Both Omnibusch and Chicago Grain, as corporations, fall within the definition of an enterprise. 18 U.S.C. § 1961(4). Both Omnibusch and R.E. Busch meet the definition of "person" since both are entities "capable of holding a legal or beneficial interest in property". 18 U.S.C. § 1961(3). The agency relationships which are asserted to exist between these Defendants are sufficient to indicate that Defendant R.E. Busch and/or Defendant Omnibusch may be the persons who acted upon the enterprises of Defendant Omnibusch and/or Defendant Chicago Grain. Therefore, I am unable to find that Plaintiffs can prove no set of facts which would establish an enterprise distinct from a culpable person. Plaintiffs would be free at trial, of course, to develop facts which would establish other "persons" or "enterprises" as defined by RICO.

Defendants' second argument concerning the enterprise element asserts that Plaintiffs have failed to allege an enterprise distinct from the pattern of racketeering activity. 18 U.S.C. § 1961(5) defines a pattern of racketeering activity as at least two acts of racketeering activity which occur within 10 years of each other. A pattern of racketeering is a distinct element of a RICO claim which must be proven, and is not synonomous with the enterprise which also must be proven. The Supreme Court in *U.S. v. Turkette, supra,* explained the relationship between these two elements:

> [An enterprise] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. [A pattern of racketeering activity] is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish the separate elements may in particular cases coalese, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved. *U.S. v. Turkette,* at 583, 101 S.Ct. at 2528.

Plaintiffs allege in ¶¶ 42 and 43 that Defendants employed the US Postal Service mail and communications by wire two or more times thereby violating 18 U.S.C. §§ 1341, 1343 and 1962(c). Plaintiffs thus adequately plead a pattern of racketeering activity. They make no attempt to equate this pattern as synonomous with the enterprises of Defendant Omnibusch and/or Defendant Chicago Grain. I find, therefore, that Plaintiffs have alleged an enterprise or enterprises sufficiently distinct from the pattern of racketeering activity which they assert. For these reasons, Defendants' Motion to Dismiss on the ground that Plaintiffs failed to sufficiently allege an enterprise is denied.

### RICO Injury

As their third basis for dismissal, Defendants maintain that Plaintiffs must allege an injury which results from a *pattern* of racketeering activity, not merely those injuries which result from the *sepa-*

*rate acts* composing the pattern. In RICO parlance, these separate acts are known as "predicate acts", and an injury resulting from a pattern of racketeering activity as a "racketeering injury".

In making this argument, Defendants are in respected company. Both Defendants and Plaintiffs have supplied the Court with copies of recently issued but still unpublished opinions on this issue, and the Court is grateful for the instruction which these cases provide. The recently issued Second Circuit Court of Appeals' trilogy supports Defendants' argument. *Sedima v. Imrex*, 741 F.2d 482 (CA2 1984); *Bankers Trust v. Rhoades*, 741 F.2d 511 (CA2 1984); *Furman v. Cirito*, 741 F.2d 524 (CA2 1984). However, *Haroco v. American National Bank and Trust Company of Chicago*, 747 F.2d 384 (CA7 1984), does not, and is strongly critical of the Second Circuit trilogy.

18 U.S.C. § 1964(c) requires that a RICO plaintiff be injured "by reason of a violation of § 1962." District courts are spiit concerning whether this requires injury due to the predicate acts or something more, a "racketeering injury". *Haroco, supra,* collects these cases at pages 387–388, footnotes 3 and 4. As the *Haroco* court notes, there does not seem to be a clear majority on one side or the other. In addition, the Circuit Courts of Appeals are also divided and the *Haroco* court also collects these cases at page 388, footnotes 5 and 6.

The Sixth Circuit Court of Appeals has not addressed this issue and no published opinions from the Western District of Michigan were cited by the parties or found by the Court. Therefore, this Court is free to chose that side of the issue which it finds most compelling and reasonable.

■ The Court has carefully read the cases cited and provided by both Plaintiffs and Defendants. Based on its thorough review of these authorities, the Court determines that *Haroco, supra,* and the dissenting opinions in *Sedima, supra,* and *Bankers Trust, supra,* and the views of the majority in *Furman, supra,* which re-luctantly followed the precedents of *Sedima, supra,* and *Bankers Trust, supra,* state the rule which best affectuates the congressional policy behind the enactment of RICO. Therefore, this Court finds that Plaintiffs sufficiently allege injury pursuant to RICO when they allege injury as the result of the predicate acts that comprise the pattern of racketeering activity. Here, Plaintiffs have done so by alleging injury which resulted from violations of 18 U.S.C. §§ 1341, 1343 and 1962(c).

The court in *Sedima, supra,* in limiting RICO civil actions to those cases involving racketeering injury, noted that the purpose of RICO is to combat organized crime. Through an examination of RICO's legislative history and language analogous to RICO's "by reason of" phrase found in the Clayton Act, the *Sedima* court arrived at the conclusion that because RICO's purpose is to combat organized crime, its available civil remedies should be limited to that activity which RICO was intended to deter. Thus, the *Sedima* court theorized that the injury due to such activity is different than that caused by simply predicate acts. At 496. The Court imposed the standing requirement that a plaintiff must allege and show a racketeering injury. It felt such a standard requirement would best meet the purpose of the Act without fostering a further "explosion of civil RICO litigation", at 486, or suits against "such respected and legitimate 'enterprises' as the American Express Company, E.F. Hutton and Company, Lloyds of London, Bear Stearns and Company, and Merrill Lynch," at 487.

The *Sedima* court did not more specifically define racketeering injury than to state that it is "an injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by activity which RICO was designed to deter." At 496. The court in *Bankers Trust, supra,* was no more specific concerning the definition of the racketeering injury, and found none existed even in view of the defendants' outrageous shifting of vast assets from one company to another

to avoid a debt, litigation of numerous frivolous suits against plaintiffs in several forums, and bribery of a state court judge.

In determining that *Haroco, supra,* and the Second Circuit dissent state the best rule, the Court finds persuasive the *Haroco* court's discussion of the Second Circuit trilogy, and the congressional intent and policy:

> It is true that the legislative history includes relatively little material on RICO's private civil remedy, *see Sedima, S.P. R.L. v. Imrex Company,* [741 F.2d 482 (1984)] at 492 ("clanging silence of the legislative history"), but it is also clear that Congress deliberately chose the very broad language of RICO's provisions. Both the proponents and the opponents of RICO recognized the extraordinary breadth of its terms. The opponents argued that the breadth of the statute might chill civil liberties, and the proponents of RICO defended the broad terms on the grounds that narrower terms would provide loopholes through which the primary targets of RICO might escape. Indeed, the unifying threat of RICO's legislative development was a desire to avoid creating loopholes for clever defendants and their lawyers. "In short, Congress chose to provide civil remedies for an enormous variety of conduct, balancing the need to redress a broad social ill against the virtues of tight, but possibly overly astringent, legislative draftsmanship." *Schacht [v. Brown],* 711 F.2d [1343 (7th Cir.1983)] at 1354–55. As we said more recently in response to a similar challenge:
>
> > But Congress deliberately cast the net of liability wide, being more concerned to avoid opening loopholes through which the minions of organized crime might crawl to freedom than to avoid making garden variety frauds actionable in federal treble damage proceedings—the price of eliminating all possible loopholes.
>
> *Sutliff, Inc. v. Donovan Cos, supra,* 727 F.2d [648] at 654 [7th Cir.1984]. *See Moss v. Morgan Stanley, Inc., supra,* 719 F.2d [5] at 21 [2d Cir.1983] (it is not

the judiciary's role to reassess Congress's balance of costs and benefits of RICO).

> In addition, even if Congress had meant to leave the door open to narrower judicial interpretations of the statute, we said in *Schacht* that many of the provisions of RICO are so broad that "there is simply no legitimate principled criterion, for accomplishing that task. 711 F.2d at 1356. For example, since Congress itself rejected any attempts to employ the concept of "organized crime" in any colloquial sense in the language of RICO, the courts have thoroughly repudiated the contention that the civil provisions of RICO apply only to organized crime. *See Schacht, supra,* 711 F.2d at 1353–54; *Alcorn County [v. U.S. Interstate Supplies, Inc.] supra,* 731 F.2d [1160] at 1167 [5th Cir.1984]; *Moss v. Morgan Stanley, Inc., supra,* 719 F.2d at 21 & n. 17; *Bennett v. Berg, supra,* 685 F.2d [1053] at 1063 [8th Cir.1982]; *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 457 (7th Cir), *cert. den.,* 459 U.S. 880 [103 S.Ct. 177, 74 L.Ed.2d 145] (1982). And without reviving the discredited "organized crime" approach, the other deliberately broad terms of RICO, such as "person," "enterprise," "conduct," and "participate," offer few toeholds for courts seeking to narrow RICO's application. *Haroco, supra,* at 390–391. (footnotes omitted)

The *Haroco* court additionally noted that "it appears *Sedima* has revived the discredited 'organized crime nexis' requirement without quite saying so", at 394, and that "*Sedima* accurately describes Congress' central purpose in passing RICO, but the application of RICO has never been limited to those purposes," at 395.

For these reasons, Defendants' Motion to Dismiss on this ground is denied.

### *Criminal Conviction of Predicate Acts*

■ In Defendants' fourth ground for dismissal, they argue that there can be no civil RICO violation where there is no crimi-

nal conviction for the predicate acts. The Sixth Circuit has dispositively ruled on this issue in *USACO Coal v. Carbomin Energy*, 689 F.2d 94 (1982). The court stated:

The defendants have not been subjected to any criminal proceedings under RICO for the acts complained of by the Plaintiffs. We are of the opinion that 18 USC § 1964(c) creates a private right of action for parties injured by conduct that violates 18 USC § 1962 without any requirement of a prior criminal conviction for that conduct. *USACO Coal, supra,* at 95, n. 1.

Accordingly, Defendants' Motion to Dismiss on this basis is denied.

### Link to Organized Crime

Defendants finally assert that where no allegation is made of organized crime's involvement, no civil RICO action will lie. As stated by the court in *Haroco, supra,* this is a position which has been soundly rejected by a majority of the Courts which have considered it. At 391. Defendants' Motion to Dismiss on this ground is denied.