OMEGA CONSTRUCTION COMPANY, INC., a Michigan corporation, Plaintiff,

v.

Joel L. ALTMAN; Altman Development Corporation, a Michigan corporation; Lakepointe of Jacaranda, Ltd., a Florida limited partnership; Arbor Club at Boca Raton, Ltd., a Florida limited partnership; Arbor Green Limited Dividend Housing Association, a Michigan limited partnership; the Meadows Limited Dividend Housing Association, a Michigan limited partnership; Jointly and Severally, Defendants.

No. G86–736.

United States District Court, W.D. Michigan, S.D.

July 24, 1987.

Peter R. Tolley & Paul Nelson, Tolley, Fisher & Verwys, Grand Rapids, Mich., for plaintiff.

Jack C. Davis, David M. Lick, & Jeffrey W. Bracken, Loomis, Evert, Ederer, Parsley, Davis, & Gotting, Lansing, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

There are seven motions pending before the Court for decision in this action: (1) defendants' October 3, 1986 Motion to Dismiss Complaint; (2) defendants' October 6, 1986 Motion for Dismissal or in the Alternative for a Stay; (3) defendants' January 14, 1987 Motion to Dismiss Count V of the Complaint Pursuant to F.R.Civ.P. 12(b)(6); (4) defendants' March 4, 1987 Motion to Dismiss Amended Complaint; (5) defendants' March 4, 1987 Motion for Dismissal of Amended Complaint or in the Alternative for a Stay; (6) defendants' March 4, 1987 Motion to Dismiss Counts V–VII of the Amended Complaint Pursuant to F.R.Civ.P. 12(b)(6); and (7) defendants' January 30, 1987 Appeal of the Magistrate's Orders of January 21, 1987. Defendants' fourth, fifth, and sixth motions have effectively

456

superseded their first three motions, and the Court thus will dismiss the latter motions as being moot. After a brief discussion of the facts of this case, I will discuss the remaining motions in the order in which they are listed above. Preliminarily, I note that defendants' motions require me to consider and to discuss numerous legal principles concerning rule 9(b) of the Federal Rules of Civil Procedure, the prerequisites for claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the elements of a claim of fraud, and when a federal district court should dismiss or stay a proceeding in favor of concurrent state court proceedings.

*Facts*

Plaintiff is a Michigan construction company that has its headquarters in Grandville, Michigan. Defendant Joel Altman ("Altman") is a businessman who lives in East Lansing, Michigan. Altman apparently is the sole shareholder of defendant Altman Development Corporation ("ADC") which is, as its name suggests, an organization that engages in various kinds of real estate development projects. In particular, this case concerns various apartment projects that defendants Altman and ADC have constructed and developed. To build these projects, defendants Altman and ADC organized four limited partnerships in which they apparently were among the general and limited partners: (1) Lakepointe of Jacaranda, Ltd. ("Lakepointe"); (2) Arbor Club of Boca Raton, Ltd. ("Arbor Club"); (3) Arbor Green Limited Dividend Housing Association ("Arbor Green"); and (4) Meadows Limited Dividend Housing Association ("Meadows"). Defendant Lakepointe was organized to construct an apartment development in Plantation, Florida; defendant Arbor Club was organized to construct an apartment development in Boca Raton, Florida; defendant Arbor Green was organized to construct an apartment development in Houghton, Michigan; and defendant Meadows was organized to construct an apartment development in Roseville and St. Clair Shores, Michigan. These four limited partnerships also are defendants in this proceeding.

With regard to each apartment complex, defendants Altman, ADC, and the appropriate limited partnership entered into a construction contract with the plaintiff. Plaintiff alleges in its amended complaint that defendants entered into these contracts with the fraudulent intent not to fulfill them, but rather to induce and to defraud plaintiff into constructing apartment complexes that were substantially more valuable and costly than what the defendants had contracted to have plaintiff build. In other words, plaintiff alleges that defendants fraudulently intended to get more for their money from it. Plaintiff further alleges that these fraudulent schemes were simply a part of defendants' overall method of conducting business "through a ... course of conduct involving inducing others to enter into contracts without having the present intention to perform, intending to refuse to pay for work performed under the contract and for changes in the work and intending to unreasonably withhold acceptance of completed work." Amended Complaint ¶ 82.

Plaintiff alleges that defendants engaged in a series of actions designed to implement these fraudulent schemes. With regard to the Lakepointe project, plaintiff alleges that defendants improperly declared it to be in default under the contract and improperly terminated its employment; recognized a commencement date that was improper because plaintiff was lacking the permits it needed to commence construction of the project on that date; wrongfully made material changes in the contract drawings; and refused to acknowledge and to pay for extra work plaintiff had performed on the project. With regard to the Arbor Club project, plaintiff alleges that defendants improperly declared it to be in default under the contract and improperly terminated its employment; fraudulently revised the drawings for the project; refused to recognize the proper commencement date for the project; and engaged in similar fraudulent conduct with other parties involved in the project. With regard to the Arbor Green project, plaintiff alleges that defendants fraudulently had failed to inform it that the engineering firm which had conducted the preliminary subsurface

investigation had encountered some bedrock and had recommended that plaintiff's contract include a rock excavation clause. Finally, with regard to the Meadows project, plaintiff alleges that defendants intentionally had modified requests for change orders, which they subsequently submitted to the Michigan State Housing Development Authority for final approval, so as to delete requested increases in the contract price and to indicate that no change in the contract price was required. In this manner, plaintiff alleges, defendants sought to deny it just compensation for work it had performed.

On August 8, 1986 plaintiff filed a five count complaint against defendants. It alleged in counts I, II, III, and IV of the complaint that the actions described above constituted common-law fraud. It alleged in count V of the complaint that defendants had violated the RICO statute by conducting their enterprises through a pattern of racketeering activity, *i.e.*, mail fraud and wire fraud. In October 1986 and January 1987 defendants filed three motions seeking dismissal of plaintiff's claims. In partial response to these motions, plaintiff requested leave to amend its complaint to rectify certain deficiencies. On February 10, 1987 the Court granted plaintiff leave to file an amended complaint, and requested defendants to file supplemental memoranda on their motions to dismiss once plaintiff had filed its amended complaint. Plaintiff filed its amended complaint on February 20, 1987, raising essentially the same claims it had raised in its original complaint, and defendants subsequently supplemented their motions to dismiss. The Court will discuss the facts of this case further as it decides the pending motions.

### Standard of Decision

A court cannot dismiss a complaint under rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim[s] which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making this determination, a court must accept as true all well-pleaded allegations of the complaint

and it must draw all inferences from such allegations in plaintiff's favor. Finally, in reviewing the Magistrate's discovery order, rule 72 provides that the Court "shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." FRCP 72(a).

### Discussion

#### A. Motion to Dismiss Amended Complaint

Defendants request the Court to dismiss plaintiff's amended complaint under rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a court may dismiss a complaint that fails to state a claim upon which relief can be granted. Rule 9(b) provides, in part, that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Defendants argue that the Court should grant its request because plaintiff has failed to allege actionable fraud, and has failed to state with sufficient particularity the circumstances constituting the alleged fraud. Defendants further argue that if the Court dismisses plaintiff's claims of fraud (counts I–IV of the amended complaint), then it also must dismiss plaintiff's RICO claims (counts V–VII of the amended complaint) because the requisite predicate acts for those claims would be lacking.

Defendants also urge the Court not to exercise pendent jurisdiction over plaintiff's fraud claims. I will discuss that motion in the next section of this opinion. For now, I note that I will decline to exercise pendent jurisdiction over plaintiff's state law claims of fraud. I will, however, discuss the merits of defendants' motion to dismiss under rules 9(b) and 12(b)(6) anyway because it raises the issue of whether plaintiff will be able to prove defendants were engaged in a scheme or artifice to defraud. If defendants' actions did not constitute fraud under the common law, then they did not engage in a scheme or artifice to defraud the plaintiff. *See Epstein v. United States*, 174 F.2d 754, 766 (6th Cir.1949). I will look to Michigan law in addressing this issue because it appears

to represent accurately the common law of fraud.

■ Plaintiff bases its claims of fraud primarily on its belief that defendants entered into the apartment construction contracts with the intent not to fulfill them. As a result, plaintiff alleges, serious disputes arose between the parties during the course of their business dealings and it never got paid for the work it had performed. Defendants argue that plaintiff, for purposes of establishing a federal RICO claim, seeks to transform simple, ordinary construction contract disputes into claims of wire fraud and mail fraud. They note that the essence of plaintiff's claims is fraud in the inducement, *i.e.*, that defendants fraudulently induced plaintiff to enter into the construction contracts, and argue that such claims are without merit because under Michigan law "a promise to do some future act or thing does not constitute a fraudulent misrepresentation but rather is contractual in nature." Defendants' Supplemental Brief at 4. Defendants argue that plaintiff has failed to plead that they made any misrepresentations or engaged in any fraudulent acts on which it reasonably or detrimentally relied. Rather, defendants contend, in each count of its complaint plaintiff simply sets forth facts that evince the parties' inability to agree on how to interpret and apply certain aspects of the contract. Finally, defendants argue that plaintiff's allegations, even if they conceivably could state a claim for relief, fail to comply with rule 9(b) because, among other things, they fail to state the time, place, and nature or content of each purported misrepresentation; fail to indicate how each misrepresentation was false or misleading; and fail to establish reasonable reliance on the misrepresentation.

Under Michigan law, a claim of fraud consists of the following six elements: (1) the defendant must have made a material representation; (2) that was false; (3) that he either knew was false when he made it or that he made recklessly; (4) that he intended plaintiff to act on; (5) the plaintiff must have acted in reliance on the representation; and (6) the plaintiff must have thereby suffered injury. *See Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976). In this case, defendants in particular dispute plaintiff's contentions that they made material misrepresentations and that it properly relied on such misrepresentations.

Under Michigan law, as defendants argue, "a promise of something to be done in the future is not a misrepresentation of an existing fact" and thus generally cannot support a claim of fraud. *Boston Piano & Music Co. v. Pontiac Clothing Co.*, 199 Mich. 141, 146, 165 N.W. 856 (1917). "Statements promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud"; failure to perform a promise, moreover, cannot, by itself, constitute evidence of fraud. *Id.* at 147, 165 N.W. 856; *see Higgins v. Kenneth R. Lawrence, DPM, PC*, 107 Mich.App. 178, 184, 309 N.W.2d 194 (1981) ("an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact"; "[f]uture promises are contractual and do not constitute fraud").

Michigan courts, however, have recognized a bad faith exception to this rule. Specifically, a "fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance." *Hi-Way Motor Co.*, 398 Mich. at 338–39, 247 N.W.2d 813; *accord Gordon v. Soble*, 120 Mich.App. 831, 840, 328 N.W.2d 119 (1982) ("If at the time the representation was made there was no present intent to carry it out, ... the representation constitutes fraud"). The complaining party must establish that the promise was given "for the purpose of deceiving the promisee and influencing his conduct." *Connellan v. Himelhoch*, 506 F.Supp. 1290, 1297 (E.D. Mich.1981). To support this kind of misrepresentation, moreover, the plaintiff must allege and produce evidence of fraudulent intent that relates "to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter.'" *Hi-Way Motor Co.*, 398 Mich. at 338–39, 247 N.W.2d 813.

In conjunction with these prerequisites for a valid claim of fraud, the Court must consider the effect of rule 9(b) in evaluating the legal sufficiency of plaintiff's amended complaint. Rule 9(b)'s requirement that a plaintiff plead the circumstances constituting fraud with particularity serves three purposes. "First, it ensures that fraud allegations are concrete enough to give defendants fair notice of the grounds of the complaint, so they can prepare a defense. Second, it protects defendants' reputations of goodwill from the harm that comes from being accused of serious wrongdoing. Third, it inhibits the filing of complaints that are a pretext for the discovery of unknown wrongs, or that are groundless claims designed to coerce a settlement out of defendants who wish to avoid the time and expense of defending themselves." *In re Consumers Power Co. Securities Litigation,* 105 F.R.D. 583, 591 (E.D.Mich.1985). To fulfill these purposes, a plaintiff alleging fraud must include in its complaint assertions "of 'time, place and contents of [the] false representations ... [and] the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Eaby v. Richmond,* 561 F.Supp. 131, 136 (E.D.Pa.1983), *quoting Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). At a minimum, "a plaintiff must ... allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). A court should not, however, apply rule 9(b) strictly, without regard for the " 'general simplicity and flexibility contemplated' " by the federal rules. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), *quoting Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3d Cir.1983).

With these factors in mind, the Court will examine plaintiff's four counts of fraud. Plaintiff's first count of fraud concerns the Lakepointe project. Plaintiff in essence alleges that defendants Lake-pointe, Altman, and ADC entered into a construction contract with it; represented that they intended to fulfill their obligations under the contract; made those representations with the intent that plaintiff rely on them and enter into the contract; had no present intention to fulfill their obligations under the contract; and in entering into the contract acted in bad faith and with the intent to defraud the plaintiff. Amended Complaint, ¶¶ 14–20. Plaintiff also enumerates other acts defendants allegedly committed in furtherance of their scheme to defraud and which also constituted separate acts of fraud. Defendants argue that plaintiff's allegation of fraud in the inducement is conclusory and improper under rule 9(b), and contend that the other acts of which plaintiff complains do not constitute fraud.

The Court believes that plaintiff has adequately stated a claim of fraud in the inducement with regard to the Lakepointe project, even though its claim just barely satisfies the requirements of rule 9(b). Defendants correctly argue that the acts alleged in paragraphs 22 through 24 of the amended complaint probably do not constitute separate acts of fraud. In paragraph 22, for example, plaintiff alleges that defendants improperly declared it to be in default under the contract and terminated the contract. Yet plaintiff does not allege that defendants made any material misrepresentations on which it reasonably relied to its detriment. Similarly, the allegations contained in paragraph 24 do not, by themselves, constitute actionable fraud, and do not satisfy the requirements of rule 9(b). The Court believes, however, that these allegations do properly support plaintiff's claim that defendants entered into the contract in bad faith, with the present intent not to carry out their obligations under the contract. This same reasoning applies to the allegations contained in paragraph 25 of the amended complaint.

Defendants argue that plaintiff's evidence of their fraudulent intent is too remote in time to support its claim of fraud, and that mere nonperformance of a contract is not evidence of fraud. The Michi-

gan cases do not indicate precisely how close in time the conduct evincing the actor's fraudulent intent must be to the making of the alleged misrepresentation. The Court believes, however, that the actions at issue here—which apparently occurred in about a year's time span—are sufficiently close in time to the alleged misrepresentation to be relevant. *Compare Hi-Way Motor Co.*, 398 Mich. at 338–39, 247 N.W.2d 813 (letter written three years after the alleged misrepresentation too remote in time to indicate fraudulent intent).

With regard to the requirements of rule 9(b), although plaintiff's supporting allegations do not, taken individually, satisfy those requirements, I believe that in general count I is sufficiently specific to survive defendants' motion to dismiss. Since count I satisfies the requirements of both rule 9(b) and rule 12(b)(6), the Court will deny defendants' motion to dismiss it on that basis.

Plaintiff's second claim of fraud concerns the Arbor Club project. As with its first claim of fraud, plaintiff contends that defendants entered into this project with the intent not to fulfill their obligations under the contract, and alleges that defendants engaged in a number of actions that evince their fraudulent intent. The Court's ruling on this count is the same as its ruling on count I. I believe that plaintiff has adequately pled a claim of fraud in the inducement with regard to defendants' intent in entering into the contract, even though the other allegations in the count (paragraphs 40 through 42) do not constitute separate acts of fraud. These other allegations do support plaintiff's contention that defendants entered into the contract in bad faith, without the intention of fulfilling their obligations under it. Since count II adequately states a claim for fraud under Michigan law and satisfies the requirements of rule 9(b), the Court will deny defendants' motion to dismiss it on that basis.

■ Plaintiff's third claim of fraud concerns the Arbor Green project. Its claim of fraud on this project differs from its claims on the other projects. Here, plaintiff contends that defendants committed fraud by failing to inform it of the presence of bedrock in the construction area even though their engineering firm had told them of the bedrock, and by deleting from the engineering firm's subsurface exploration report a recommendation that the contract contain a rock excavation clause. Defendants argue that this count does not state a claim of fraud for four reasons: (1) defendants did not owe a duty to plaintiff to disclose the rock excavation clause recommendation; (2) plaintiff had no valid expectation of receiving the engineer's opinion on whether the contract should contain such a clause; (3) plaintiff was not misled by the omission of the reference to the clause in the engineer's report because it had access to the substantive facts contained in the report; and (4) plaintiff suffered no monetary loss because of defendants' action. The Court must reject defendants' arguments, at least at this time, and will deny its motion to dismiss count III on that basis.

Defendants' first argument appears to assume the existence of facts that have not yet been established. The issue of whether defendants owed a duty of disclosure to the plaintiff implicates factual considerations about the relationship between a developer and a general contractor that the Court cannot resolve in deciding defendants' motion to dismiss. Plaintiff's allegation that it relied on this nondisclosure, moreover, suffices to support the legal sufficiency of its claim. Amended Complaint ¶ 57. Defendants' second argument likewise is without merit. The essence of plaintiff's claim is that it was entitled to know of the engineer's recommendation that the contract contain a rock excavation clause because there was bedrock in the construction site, not that it was entitled to rely on the engineer's "opinion" about the contents of the contract. Implicit or explicit in the engineer's recommendation was the statement of fact that the construction area contains bedrock. Plaintiff properly claims as fraud defendants' failure to have informed it of this fact. As with the first argument, defendants' third argument assumes facts that are not in the record. At this point, the Court does not know wheth-

er plaintiff had access to information concerning bedrock in the construction area or whether it was obligated to have investigated the construction site. Finally, defendants' final argument, concerning whether plaintiff suffered any financial injury, also presents a factual issue that the Court cannot resolve at this time.

■ Plaintiff's final claim of fraud concerns the Meadows project. As with counts I and II, in this count plaintiff alleges that defendants entered into the construction contract with the intent not to fulfill their obligations under it. In support of this claim, plaintiff contends that defendants Altman, ADC, and Meadows modified requests for change orders that plaintiff had submitted by deleting the dollar amounts contained in such orders and substituting the words "No Change in Contract Price." Amended Complaint ¶ 77. Defendants argue that plaintiff has failed to state a claim of fraud. The Court agrees. In counts I and II, which presented similar factual situations, plaintiff made supporting allegations indicating that defendants may have entered into contracts with the intent not to fulfill their obligations under them. The situation is different, however, with regard to count IV. Paragraph 77, which contains plaintiff's supporting allegations, on its face raises no inference of wrongdoing. Plaintiff provides no support for its allegation that defendants wrongfully modified the requests for change orders. Given the general reluctance of Michigan courts to accept the kind of fraud plaintiff alleges in count IV, and the evidentiary requirements for establishing the existence of such fraud, the Court believes that it should grant defendants' motion to dismiss this count.

In accordance with the above discussion, the Court will enter an order dismissing count IV of the amended complaint under rule 12(b)(6), and denying defendants' motion to dismiss counts I, II, and III under rules 9(b) and 12(b)(6).

B. *Motion to Dismiss or to Stay*

Defendants predicate their next motion to dismiss or to stay this proceeding on the presence of state court proceedings in Florida and Michigan in which the parties are litigating the issues of fraud that plaintiff has raised in counts I through IV of its amended complaint. They argue that since plaintiff has raised or could raise its fraud claims in these state court proceedings, the Court should decline to exercise its pendent jurisdiction over such claims. Defendants also contend that the Court should stay any further proceedings on plaintiff's RICO claims pending the outcome of the state court proceedings.

■ The Court agrees with defendants that it should decline to exercise pendent jurisdiction over plaintiff's state law fraud claims. "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). A court may decline to exercise pendent jurisdiction over state law claims for relief when "considerations of judicial economy, convenience and fairness to" the litigants do not require it to exercise such jurisdiction; when to decline jurisdiction may avoid needless decisions of state law; and when "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Id.* In this case, it appears that the state courts of Florida and Michigan either have resolved or will have an opportunity to resolve plaintiff's fraud claims. The doctrine of comity and concerns of judicial economy thus indicate that I should refuse to entertain plaintiff's fraud claims in this Court. With respect to the fraud claims that plaintiff has raised or could raise in the Florida courts, moreover, convenience also favors a refusal to hear such claims. Finally, it appears that the state law issues may dominate this case were the Court to exercise jurisdiction over them.

■ The Court thus will dismiss plaintiff's remaining claims of fraud—counts I–III of its amended complaint—without prejudice to plaintiff's right to pursue such claims in the appropriate state fora. I decline, however, to dismiss or to stay plain-

tiff's RICO claims, counts V–VII of its amended complaint. Plaintiff properly brought such claims in this Court, and I see no basis for declining to exercise jurisdiction over them. *Cf. Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (noting the federal courts' " 'virtually unflagging obligation ... to exercise the jurisdiction given them' ") (citation omitted). The mere fact that state courts may exercise concurrent jurisdiction over plaintiff's RICO claims does not justify requiring plaintiff to raise them in those courts. There is, moreover, no reason to stay further consideration of plaintiff's RICO claims pending the state courts' determination of its fraud claims.

■ Plaintiff bases its RICO claims on defendants' alleged violations of the federal mail fraud and wire fraud statutes. 18 U.S.C. §§ 1341 & 1343. To prove that defendants have violated these statutes, and thus have engaged in racketeering activity, *see* 18 U.S.C. § 1961(1)(B), plaintiff must establish that defendants both had developed "a scheme or artifice to defraud" and had employed the mails or wire, radio, or television communications "for the purpose of executing the scheme." *Bender*, 749 F.2d at 1215–16. It need not, however, establish that it was actually defrauded, although as a practical matter it may need to do so to establish its right to monetary relief. *See United States v. Goodpaster*, 769 F.2d 374, 379 (6th Cir.1985), *cert. denied*, 474 U.S. 983, 106 S.Ct. 391, 88 L.Ed.2d 343 (1986); *Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 481–82 (5th Cir.1986). Plaintiff's state law and federal law claims thus, at least to some degree, present factually independent bases for relief. Each party may, of course, argue upon the conclusion of the state court proceedings that certain factual issues have been resolved and apply in this proceeding under the doctrine of collateral estoppel. There is, however, no reason to stay further consideration of plaintiff's RICO claims pending the outcome of the state court proceedings.

In accordance with the above discussion, the Court will enter an order dismissing counts I–III of the amended complaint without prejudice. I will exercise jurisdiction over, and will not stay further consideration of, plaintiff's RICO claims.

### C. *Motion to Dismiss Counts V–VII*

In this motion, defendants seek to have the Court dismiss plaintiff's RICO claims. They raise several grounds in support of this motion: first, that plaintiff has not adequately pled that they engaged in acts of racketeering activity, *see* 18 U.S.C. § 1961(1); second, that plaintiff has failed to state a claim for relief under section 1962(a); third, that count V does not adequately plead the existence of a pattern of racketeering activity, in particular with regard to the limited partnerships and ADC; and fourth, that counts VI and VII fail to plead adequately both the existence of an enterprise and the existence of a pattern of racketeering activity. The Court finds that plaintiff has adequately pled RICO claims against defendants ADC and Altman. I will, however, dismiss its RICO claims against the limited partnerships—defendants Lakepointe, Arbor Club, Arbor Green, and Meadows—for failure to plead adequately that these defendants engaged in a pattern of racketeering activity and for failure to allege the proximate causation required by section 1964(c).

■ Plaintiff alleges that defendants have violated both section 1962(a) and section 1962(c) of the RICO statute. Section 1962(a) provides in pertinent part that "[i]t shall be unlawful for any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... any part of such income ... in acquisition of any interest in, or the establishment or operation of, any enterprise...." 18 U.S.C. § 1962(a). Section 1962(c) provides in pertinent part that "[i]t shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c). To establish a violation of section 1962(a), a

plaintiff must prove that the defendant received income from a pattern of racketeering activity, and used such income to acquire an interest in, establish, or operate any enterprise. To establish a violation of section 1962(c), a plaintiff must prove that the defendant (1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346, 358–59 (1985). Common to both sections is the requirement that the defendant must somehow have been associated with a pattern of racketeering activity.

In this case, plaintiff alleges that the requisite pattern of racketeering activity may be found in the various mailings defendants made in furtherance of the fraudulent schemes alleged in counts I–IV of the amended complaint. See Amended Complaint ¶¶ 90–92. Defendants object that plaintiff at best has pled the existence of a single scheme to defraud, and that a pattern of racketeering activity cannot be found in the fact that a number of mailings may have been made, or a number of enterprises may have been formed, to implement that scheme. Defendants particularly object to plaintiff's RICO claims against the limited partnerships.

 The Court agrees with defendants that it should dismiss the section 1962(c) claims against the limited partnerships for failure to allege a pattern of racketeering activity. In a 1984 opinion, I indicated that two mailings in support of a single scheme or artifice to defraud may constitute a pattern of racketeering activity. *Ross v. Omnibusch, Inc.*, 607 F.Supp. 835, 838 (W.D. Mich.1984). Some courts still adhere to this interpretation of the pattern of racketeering activity requirement. See *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1354–55 (5th Cir.1985) (two mailings in support of a single scheme to defraud); *Haroco, Inc. v. American National Bank and Trust Co.*, 647 F.Supp. 1026, 1028–31 (N.D. Ill.1986) ("a number of mailings, fraudulent within the meaning of 18 U.S.C. § 1341, in furtherance of a fraudulent scheme, constitute a pattern of racketeering activity").

In light of the Supreme Court's indication in *Sedima,* however, that courts should develop "a meaningful concept of 'pattern' ", *Sedima,* 473 U.S. at 500, 105 S.Ct. at 3287, 87 L.Ed.2d at 361; *see id.* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, 87 L.Ed.2d at 358–59 n. 14, other courts have been less willing to find a "pattern" of racketeering activity simply because a defendant made a number of separate mailings in furtherance of a scheme or artifice to defraud the plaintiff. *See Lipin Enterprises Inc. v. Lee*, 803 F.2d 322, 323–24 (7th Cir.1986); *id.* at 325 (Cudahy, J., concurring); *Graham v. Slaughter*, 624 F.Supp. 222, 224–25 (N.D.Ill.1985).

I believe that the following, rather lengthy, quotation from a recent decision by the Seventh Circuit accurately summarizes the proper interpretation of the "pattern of racketeering activity" requirement, particularly in the context of mail fraud and wire fraud claims:

> We acknowledge that subsequent to the Supreme Court's opinion in *Sedima,* the mere commission of two or more predicate acts within ten years of one another does not automatically constitute a pattern of racketeering activity.... The acts must demonstrate both a continuity and a relationship in order to constitute a pattern of racketeering activity. However, the proposition that the predicate acts must always occur as part of separate schemes in order to satisfy the continuity aspect of the pattern requirement focuses excessively on continuity, and therefore cannot be accepted as a general rule. Otherwise defendants who commit a large and ongoing scheme, albeit a single scheme, would automatically escape RICO liability for their acts, an untenable result.
>
> Instead, we agree with those courts that have steered a middle course between these two extremes. In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.,* "transactions 'somewhat separated in time and place.' " ...

Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. However, the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement. The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case, with no one factor being necessarily determinative.

In the instant case, plaintiffs have alleged that defendants committed several acts of mail fraud over a period of several years in furtherance of an overall scheme to defraud plaintiffs. These acts of mail fraud were distinct; some related to two separate foreclosure sales that occurred two years apart, while others related to allegedly fraudulent statements made in connection with the initial loan transaction. While these acts can be viewed as part of a single grand scheme, they were ongoing over a period of nearly four years in addition to being distinct acts. Under the facts of this case, plaintiffs have satisfied both the continuity and relationship aspects of the pattern requirement.

*Morgan v. Bank of Waukegan,* 804 F.2d 970, 975–76 (7th Cir.1986).

Applying this standard to the facts of this case, the Court believes that plaintiff has not adequately alleged that the four limited partnerships engaged in a pattern of racketeering activity. First, plaintiff alleges that each limited partnership directly participated in only a single scheme or artifice to defraud it, *i.e.,* each limited partnership participated directly only in the fraudulent scheme or artifice that related to the apartment project with which it was involved. Second, plaintiff does not adequately allege that each limited partnership was responsible for, or connected with, fraud concerning projects other than the one in which the particular partnership was

directly involved. Plaintiff has not, for example, adequately alleged that Lakepointe was involved in the Arbor Green project. At best, plaintiff can connect the limited partnerships with each other's projects only through their common relationship with Altman and ADC. See Amended Complaint ¶ 86 (alleging that all of the defendants constituted a group enterprise that was associated in fact). I do not believe that this connection would suffice to establish the limited partnerships' liability under Section 1962(c).

Third, and finally, plaintiff has failed to allege adequately that the scheme or artifice to defraud with which each limited partnership was connected constituted a pattern of racketeering activity. At best, plaintiff has alleged that each limited partnership made or was responsible for a series of mailings in furtherance of the scheme to defraud. These separate mailings, moreover, were not in themselves necessarily false or fraudulent, even though within the meanings of the mail fraud and wire fraud statutes they may have constituted separate indictable offenses. *Compare United States v. Ianniello,* 808 F.2d 184, 191 (2d Cir.1986) (RICO conviction upheld where the predicate acts were the successive mailings of two deceptive license renewal applications). Given the rather peculiar facts of this case, where plaintiff's primary claim is that the defendants defrauded it by entering into construction contracts without the intention to carry them out, and where the mailings alleged in paragraph 93 of the amended complaint primarily only evince defendants' fraudulent intent, the Court finds that plaintiff has failed to allege the existence of a pattern of racketeering activity by the limited partnerships. With regard to defendant Meadows, moreover, I have already found that plaintiff has not adequately pled claims of wire fraud and mail fraud against it.

■ This analysis, however, applies only to plaintiff's claims against the limited partnerships under section 1962(c). I further find, though, that plaintiff has not satisfied the requirements of section

1964(c) regarding its claims against these defendants under section 1962(a). Plaintiff has alleged that the limited partnerships received income from the racketeering activity in which defendants Altman and ADC allegedly engaged and used this income in their operations. It has not, however, indicated how the limited partnerships' violations of section 1962(a) injured it. *See* 18 U.S.C. § 1964(c); *Haroco, Inc. v. American National Bank and Trust Co.,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Heritage Insurance Co. v. First National Bank,* 629 F.Supp. 1412, 1417 (N.D.Ill.1986). The Court therefore also will dismiss plaintiff's RICO claims under section 1962(a) against the limited partnerships.

■ The situation is different for defendants Altman and ADC. With regard to its claims under section 1962(a), plaintiff has adequately pleaded such claims against defendants Altman and ADC in counts V, VI, and VII of the amended complaint. In each count, plaintiff has alleged that these defendants (count VII is limited to defendant Altman) used money derived from a pattern of racketeering activity to establish or operate certain enterprises, *i.e.,* ADC and the limited partnerships, in a manner that caused it to suffer injury. I agree with defendants that plaintiff's allegations tend to be conclusory. Nevertheless, given the doctrine of notice pleading and read in the context of the entire complaint, they are sufficient to survive a motion to dismiss. With regard to its claims under section 1962(c), plaintiff has adequately pleaded such claims against defendants Altman and ADC in counts V and VII of the amended complaint. The Court finds that it should dismiss plaintiff's claim under section 1962(c) in count VI because, as I discussed previously, plaintiff has failed to allege that defendants Altman and ADC conducted the affairs of each limited partnership through a pattern of racketeering activity.

In summary, the Court will deny defendants' motion to dismiss plaintiff's RICO claims with respect (a) to plaintiff's claims under section 1962(a) against defendant Altman and ADC and (b) to plaintiff's claims under section 1962(c) against defendants Altman and ADC, with the exception of the claim alleged in count VI of the amended complaint. In all other respects, defendants' motion is granted.

### D. *Appeal of Magistrate's Orders*

■ The final matter before the Court is defendants' appeal of the Magistrate's Orders dated January 21, 1987, in which he ordered defendants to respond to certain of plaintiff's interrogatories and requests for production of documents. Specifically, defendants Altman and ADC object to the requirements that they (a) list all legal entities through which they have done business since 1981 (interrogatory ("I") 2); (b) provide certain information regarding those entities (I 3(a)–(f)); (c) provide certain information regarding any instances in which they have been sued for fraud (I 6); (d) provide certain information regarding any instances in which they have been sued under the RICO statute (I 7); (e) provide certain information concerning all construction projects with which they have been connected since January 1, 1976 (I 8); (f) provide certain information concerning general contractors they may have defaulted in connection with other construction projects (I 9(d)); (g) provide documents concerning their ownership interests in other legal entities (Request for Production ("RP") 1); (h) provide documents concerning interrogatory 3(g) (RP 2); (i) provide certain documents regarding their association with certain legal entities (RP 3); and (j) provide certain telephone bills (RP 17). Defendants Lakepointe, Arbor Club, Arbor Green, and Meadows object to the requirement that they produce their telephone bills from January 1, 1983 to the present (RP 4).

Defendants present four arguments in support of their appeal. First, they argue that the Court should stay all discovery because plaintiff is abusing the discovery process and because plaintiff's claims are without merit. Second, they argue that plaintiff's discovery requests regarding other persons, entities, and legal proceedings with which they may have been in-

volved are irrelevant and thus should not be allowed. Third, they argue that plaintiff seeks discovery of confidential information. Finally, defendants argue that the Magistrate made a clerical error concerning interrogatory 9(d).

As I stated earlier in this opinion, I must affirm the Magistrate's Orders unless they are "clearly erroneous or contrary to law." FRCP 72(a). With the exception of interrogatory 9(d), I find that the Magistrate's Orders are proper.

I must reject defendants' first argument because I have found that plaintiff's claims are sufficient (for the most part) to survive defendants' motions to dismiss. Second, I believe that plaintiff's discovery requests regarding other persons, entities, and legal proceedings are relevant within the meaning of rule 26(b)(1) both because plaintiff must prove that defendants intended to defraud it and because plaintiff must prove that defendants Altman and ADC have engaged in a pattern of racketeering activity. Third, I find that defendants have failed to support their claim that the information plaintiff seeks is so confidential that I should apply a good cause requirement to plaintiff's discovery requests. I agree, however, that the Magistrate made a clerical mistake in requiring defendants Altman and ADC to respond to interrogatory 9(d). The Magistrate's Order thus is modified to the extent that these defendants are not required to respond to interrogatory 9(d). It is also, of course, modified to the extent that plaintiff's discovery requests concern claims or parties that are no longer in the case.

## ORDER

In accordance with the opinion dated July 24, 1987;

IT IS HEREBY ORDERED that defendants' October 3, 1986 Motion to Dismiss Complaint is DISMISSED as being moot;

IT IS FURTHER ORDERED that defendants' October 6, 1986 Motion for Dismissal or in the Alternative for a Stay is DISMISSED as being moot;

IT IS FURTHER ORDERED that defendants' January 14, 1987 Motion to Dismiss Count V of the Complaint Pursuant to F.R.Civ.P. 12(b)(6) is DISMISSED as being moot;

IT IS FURTHER ORDERED that defendants' March 4, 1987 Motion to Dismiss Amended Complaint is GRANTED in part and DENIED in part; count IV of the Amended Complaint is DISMISSED;

IT IS FURTHER ORDERED that defendants' March 4, 1987 Motion for Dismissal of Amended Complaint or in the Alternative for a Stay is GRANTED in part and DENIED in part; counts I, II, and III are dismissed without prejudice to plaintiff's right to pursue such claims in state courts;

IT IS FURTHER ORDERED that defendants' March 4, 1987 Motion to Dismiss Counts V–VII of the Amended Complaint Pursuant to F.R.Civ.P. 12(b)(6) is GRANTED in part and DENIED in part; such counts are dismissed as against defendants Lakepointe of Jacaranda, Ltd., Arbor Club at Boca Raton, Ltd., Arbor Green Limited Dividend Housing Association, and The Meadows Limited Dividend Housing Association; plaintiff's claim under sectin 1962(c) against defendants Altman and Altman Development Corporation in count VI also is dismissed;

IT IS FURTHER ORDERED that defendants' January 30, 1987 Appeal of the Magistrate's Orders of January 21, 1987 is GRANTED in part and DENIED in part; the Magistrate's Orders are modified to the extent that defendants Altman and Altman Development Corporation are not required to answer interrogatory 9(d) and to the extent that plaintiff's requests concern claims or parties that are no longer in the case.